Robert Klonoff, OSB No. 131193
2425 S.W. 76th Ave.
Portland, OR  97225
Telephone:  503.702.0218
Facsimile:  503.768.6671

David S. Stellings (*pro hac vice* application forthcoming)
Katherine McBride (*pro hac vice* application forthcoming)
Gabriel Panek (*pro hac vice* application forthcoming)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BRAD MILLER, MARK MACKENZIE, and PATRICK NIELSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KONINKLIJKE PHILIPS N.V., a foreign corporation, PHILIPS NORTH AMERICA LLC, a Delaware Corporation, and PHILIPS RS NORTH AMERICA LLC, a Delaware corporation,<br><br>Defendants. | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>Products Liability Action (28 U.S.C. § 1332)<br><br>DEMAND FOR JURY TRIAL |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Brad Miller, Mark Mackenzie, and Patrick Nielson, by and through their

undersigned counsel, bring this Complaint on behalf of themselves and all others similarly

situated for damages, declaratory relief, and punitive damages against Defendants Koninklijke

Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS

North America LLC ("Philips RS") (collectively, "Philips"), and allege as follows:

I.     **INTRODUCTION**

1.     Sleep apnea is a dangerous condition in which an obstruction in the throat causes a person to stop breathing for a brief period while sleeping. At best, this condition causes daily fatigue and restlessness. At worst, sleep apnea can seriously impede the flow of oxygen, resulting in brain damage or death.

2.     One of the most common ways to treat sleep apnea is through continuous positive airway pressure ("CPAP") therapy. CPAP therapy uses a machine that delivers a steady flow of oxygenated air through a hose connected to a mask covering the patient's mouth or mouth and nose. Another way to treat sleep apnea is through non-invasive ventilation with a bi-level positive airway pressure ("BiPAP") machine. BiPAP machines function similarly to CPAP machines, except that they deliver a higher amount of pressure during inhaling and a lower amount of pressure during exhaling. Like with CPAP therapy, BiPAP machine users receive treatment by wearing a mask connected to the machine while sleeping.

3.     Respiratory failure is a condition that occurs when a person's blood has too little oxygen or too much carbon dioxide. This condition may be caused by a physical obstruction in the lungs or a condition that affects the lungs' blood supply. If left untreated, respiratory failure may result in death or severe brain damage. One way to treat respiratory failure is through use of a mechanical ventilator, a device that forces oxygen into the lungs through a face mask connected to the machine.

4.     Philips manufactures, sells, and markets a wide variety of CPAP machines, BiPAP machines, and mechanical ventilators. To abate noise made by the devices, Philips insulated the machines with polyester-based polyurethane ("PE-PUR") foam.

5.      On June 14, 2021, Philips recalled 3-4 million of these sleep apnea machines and ventilators (the "Defective Breathing Devices") because of the risk that the PE-PUR foam insulation might degrade and become toxic. The degraded PE-PUR foam can cause low-level health problems such as skin irritation, as well as life-threatening illnesses such as cancer and serious lung problems. In its recall announcement, Philips advised its customers to discontinue use of their affected CPAP and BiPAP devices, and it instructed mechanical ventilator patients to continue treatment until they are able to discuss the situation with their physicians. Philips also recognized that CPAP and BiPAP customers may have to continue using their devices "due to lack of alternatives," and that "alternate ventilator options for therapy may not exist or may be severely limited for patients who require a ventilator for life-sustaining therapy, or in cases where therapy disruption is unacceptable."

6.      Every customer who purchased one of Philips' Defective Breathing Devices now faces an impossible choice. These patients need their CPAP machines, BiPAP machines, and mechanical ventilators to breathe, but Philips has told them further use of the devices may be dangerous. They could purchase new devices without the PE-PUR foam—Philips' announcement specifically noted that its DreamStation 2 CPAP machines, which Philips released in 2020, are not affected by the issue—but these machines are very expensive. Despite the immediacy of the issue, Philips has only made vague promises of a future "recall and replacement" program, without giving any of its customers new devices, money to buy new devices, or even direction on how to self-remedy the PE-PUR foam defect.

7.      Plaintiffs bring this class action suit on behalf of themselves and all others who purchased one of Philips' defective CPAP machines, BiPAP machines, and mechanical ventilators. On behalf of the putative class, Plaintiffs seek monetary damages, injunctive relief,

punitive damages, and all other relief that will remedy the injuries caused by Philips' fraudulent marketing and breach of applicable warranties.

II.    **PARTIES**

A.    **Plaintiffs**

8.    Plaintiff Brad Miller is a citizen of the State of Oregon and a resident of Portland, Oregon. Mr. Miller suffers from sleep apnea. Two years ago, he purchased a Philips DreamStation Auto CPAP with Humidifier (serial # J20951637FB10) from cpapsupplyusa.com. This machine was prescribed to Mr. Miller by Kaiser Permanente for nightly use. This machine cost him approximately $675. Since the recall, Mr. Miller has stopped using his Philips CPAP machine. He tried to purchase a replacement device but he was unable due to a shortage in CPAP machines caused by the recall of the Defective Breathing Devices. He is still looking for a replacement.

9.    Plaintiff Mark Mackenzie is a citizen of the State of Oregon and a resident of Portland, Oregon. Mr. Mackenzie suffers from sleep apnea. In December 2011, Kaiser Permanente prescribed him a REMStar Auto CPAP machine (serial # P04679163FEED) to treat his condition. For the first year or two, Mr. Mackenzie used the machine on a nightly basis. After that, Mr. Mackenzie would use the machine for approximately three hours a night on an intermittent basis. Recently, however, Mr. Mackenzie's CPAP therapy became even more necessary due to increased daytime drowsiness and an inability to sleep through the night. Despite Mr. Mackenzie's need to intensify his treatment, he has been unable to use his device safely since the recall. Currently, Mr. Mackenzie is not able to receive any CPAP treatment for his sleep apnea.

10.     Plaintiff Patrick Nielson is a citizen of the State of California and a resident of Santa Barbara, California. He also owns an apartment in Portland, Oregon, where he spends approximately four months per year. Mr. Nielson suffers from sleep apnea. In 2014, he purchased a REMStar 60 Series Pro CPAP Machine (serial # P104648647018) for nightly use. This machine cost him $349.00. In 2016, he purchased a REMStar 60 Series Pro CPAP Machine with Bluetooth (serial # P15237202D944) for nightly use. This machine cost him $483.65. Both purchases were made through cpap.com. Mr. Nielson purchased the first machine for use at his home in Santa Barbara, and the second machine for use at his home in Portland. He also spent $484.90 on accessories for his Philips devices, including reusable filters, humidifiers, headgear, nose pillows, and a hose cover. Since learning of the recall in June 2021, Mr. Nielson has not used either Philips machine. Because he needs nightly therapy in order to breathe while he sleeps, Mr. Nielson has been using his travel CPAP machine while he tries to find a more permanent replacement solution. Mr. Nielson plans to purchase two replacement devices, one for Santa Barbara, the other for Portland.

**B.     Defendants**

11.     Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational corporation with its principal place of business in Amsterdam, Netherlands.

12.     Defendant Philips North America LLC ("Philips NA") is a Delaware corporation with its principal place of business in Cambridge, Massachusetts. Philips NA is a wholly owned subsidiary of Royal Philips. On information and belief, Philips NA oversees all of Royal Philips' operations in the United States, including Philips RS.

13.     Defendant Philips RS North America LLC ("Philips RS") is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. Philips RS is a

wholly owned subsidiary of Royal Philips. Prior to December 2020, Philips RS operated under

the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008.

## III.    JURISDICTION AND VENUE

14.    This Court has original jurisdiction pursuant to the Class Action Fairness Act,

28 U.S.C. § 1332(d), because (a) at least one member of the proposed Class is a citizen of a state

different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive

of interest and costs, (c) the proposed Class consists of more than 100 class members, and (d)

none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

15.    This Court has personal jurisdiction over Defendants. Defendants Philips NA and

Philips RS are registered to do business in Oregon, have sufficient minimum contacts in Oregon,

committed acts in furtherance of the allegations in this Complaint in Oregon, and/or otherwise

intentionally avail themselves of the markets within Oregon through their business activities,

such that the exercise of jurisdiction by this Court is proper. Defendant Royal Philips conducts

its US operations—including the sale of the Defective Breathing Devices—through Philips NA.

The registered agent for Philips NA and Philips RS is Corporation Service Company, 1127

Broadway Street NE, Suite 310, Salem, Oregon 97301.

16.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial

part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

Defendants have marketed, advertised, and sold the Defective Devices, and otherwise conducted

extensive business, within this District.

## IV.    FACTUAL BACKGROUND

### A.    Sleep Apnea and Respiratory Failure Are Serious Conditions.

17.    Sleep apnea is a condition whereby a person stops breathing during sleep. There

are two types of sleep apnea: obstructive sleep apnea ("OSA") and central sleep apnea ("CSA").

OSA, the more common type, occurs when a physical obstruction impedes the flow of air into the lungs. Patients who suffer from CSA stop breathing not because of a physical obstruction, but because the person's respiratory muscles do not operate correctly.

18.    Sleep apnea, if left untreated, can be very dangerous.[1] The reduced amount of oxygen in the brain caused by sleep apnea can lead to brain damage, heart disease, diabetes, dementia, and death. Treating sleep apnea every night with CPAP and BiPAP therapy is crucial for avoiding these lethal outcomes.[2]

19.    Respiratory failure is even more serious than sleep apnea. People who suffer from respiratory failure have either too little oxygen or too much carbon dioxide in their blood. A low level of oxygen in the blood can cause shortness of breath and air hunger, and it may cause the patient's skin, lips, and fingernails to turn blue. A high carbon dioxide level can cause rapid breathing and confusion. Left untreated, respiratory failure can cause brain injuries, kidney failure, lung damage, and death.

20.    Although there are a few ways to treat respiratory failure, one of the most common is through mechanical ventilation. Patients who use mechanical ventilators typically have more severe cases of respiratory failure and cannot breathe on their own. Mechanical ventilators are also used to treat other conditions, such as COVID-19.

---

[1] *See, e.g.*, Noreen Iftikhar, *Sleep Apnea Mortality Statistics and the Importance of Treatment*, Healthline.com (June 11, 2019), https://www.healthline.com/health/can-you-die-from-sleep-apnea; *The Dangers of Uncontrolled Sleep Apnea*, Johns Hopkins Medicine (last visited Aug. 10, 2021), https://www.hopkinsmedicine.org/health/wellness-and-prevention/the-dangers-of-uncontrolled-sleep-apnea.

[2] *See* Melanie Pogach, *Treating Mild Sleep Apnea: Should You Consider a CPAP Device?*, Harvard Health Blog (June 15, 2020), https://www.health.harvard.edu/blog/treating-mild-sleep-apnea-should-you-consider-a-cpap-device-2020061520154.

**B.    Philips Marketed Its Defective Breathing Devices as Safe and Effective for Treating These Conditions.**

21.    Philips, through its Philips RS (formerly Respironics) and Philips NA subsidiaries, manufactures and sells several lines of CPAP machines, BiPAP machines, and mechanical ventilators. Philips markets these products as "Sleep & Respiratory Care," part of its "Connected Care" segment of business. In 2020, Sleep & Respiratory Care accounted for 49% of Philips' total worldwide Connected Care sales.[3] Philips has sold approximately 2 million Defective Breathing Devices in the United States and 3-4 million total devices worldwide.[4]

22.    Philips markets these devices as safe and effective. For example, Philips' website says that its DreamStation CPAP and BiPAP machines "empower users to embrace their care with confidence, and enable care teams to practice efficient and effective patient management."[5] Philips has advertised its ventilation products as "effective and affordable."[6]

23.    Philips does not mention in any of its marketing, advertising, labeling or instruction materials that the foam in the Defective Breathing Devices may degrade and pose a serious health threat to users.

24.    Philips' CPAP, BiPAP, and mechanical ventilator products are very expensive, costing up to thousands of dollars in retail price.

---

[3] Philips, *Annual Report 2020*, at 16, https://www.results.philips.com/publications/ar20/downloads/pdf/en/PhilipsFullAnnualReport2020-English.pdf.

[4] *See* Sean P. Murphy, *Recall of Sleep Apnea Machines Leaves Many in the Lurch, and Worried*, Bos. Globe (July 6, 2021), https://www.bostonglobe.com/2021/07/06/business/recall-sleep-apnea-machines-leaves-many-lurch-worried/.

[5] *DreamStation*, Philips.com (last visited Aug. 10, 2021), https://www.usa.philips.com/healthcare/product/HCNOCTN447/dreamstation-cpap-bi-level-therapy-systems.

[6] *See, e.g.*, *Philips Respironics BiPAP V30 Auto: Noninvasive, Auto-Titrating BiPAP*, YouTube (Oct. 15, 2018), https://www.youtube.com/watch?v=dPoHla4xDZo.

C.     **Philips Recalled Its Defective Breathing Devices.**

25.     Philips' first public admission of trouble with these devices came in its Q1 2021 quarterly report on April 26, 2021.[7] Under the innocuous heading "Regulatory Update," Philips disclosed for the first time that "user reports and testing" indicated "that there are possible risks to users related to the sound abatement foam used in certain of Philips' sleep and respiratory care devices currently in use." Philips admitted that "the foam may degrade under certain circumstances," but it did not specify the risks from this degradation. Philips did not issue a recall at this time.

26.     Nearly two months passed without a public update. Finally, on June 14, 2021, Philips issued a "voluntary recall notification."[8] In this notification, Philips admitted that there were two dangerous conditions at issue: the potential that PE-PUR foam "may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user"; and the possibility that the PR-PUR foam "may off-gas certain chemicals" (also known as "Volatile Organic Compounds," or "VOCs"). This notification warned that the PE-PUR foam degradation can cause "headache, irritation, inflammation, respiratory issues, and possible toxic and carcinogenic effects"; and that VOCs from the foam can cause "headache, irritation, hypersensitivity, nausea/vomiting, and possible toxic and carcinogenic effects."

27.     Philips elaborated on these risks that same day in a separate document entitled "Clinical information for physicians."[9] There, Philips admitted that its "[l]ab analysis" revealed

---

[7] *Philips' First-Quarter Results 2021*, Philips.com (Apr. 26, 2021), https://www.philips.com/a-w/about/news/archive/corpcomms/news/press/2021/philips-first-quarter-results-2021.html.

[8] *Philips Issues Recall Notification to Mitigate Potential Health Risks Related to the Sound Abatement Foam Component in Certain Sleep and Respiratory Care Devices*, Philips.com (June 14, 2021), https://www.usa.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html.

[9] *Sleep and Respiratory Care Update: Clinical Information for Physicians*, Philips.com (June 14,

that PE-PUR foam can degrade and cause the development of "potentially harmful chemicals," including "Toluene Diamine," "Toluene Diisocyanate," and "Diethylene glycol." Philips added that Philips RS had received "several complaints regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)" and that Philips had received "reports of headache, upper airway irritation, cough, chest pressure and sinus infection."

28.     In this document, Philips also provided further information about the risks from VOC exposure. Philips stated, "VOCs are emitted as gases from the foam included in the CPAP, BiLevel PAP and MV devices and may have short- and long-term adverse health effects." The VOCs emitted by the PE-PUR foam at unsafe levels include "Dimethyl Diazine" and "Phenol, 2,6-bis (1,1-dimethylethyl)-4-(1-methylpropyl)-." These VOCs "may cause irritation and airway inflammation," something which Philips admitted may be particularly grave for patients with underlying lung diseases or reduced cardiopulmonary reserve."

29.     Philips' recall encompassed the following CPAP and BiPAP devices:

| Device Type | Model Name and Number |
|---|---|
| Continuous Ventilator, Minimum Ventilatory Support, Facility Use | E30 (Emergency Use Authorization) |
| Continuous Ventilator, Non-life Supporting | DreamStation ASV |
| | DreamStation ST, AVAPS |
| | SystemOne ASV4 |
| | C-Series ASV |
| | C-Series S/T and AVAPS |
| | OmniLab Advanced+ |
| Noncontinuous Ventilator | SystemOne (Q-Series) |
| | DreamStation |
| | DreamStation Go |
| | Dorma 400 |
| | Dorma 500 |
| | REMstar SE Auto |

2021), https://www.philips.com/c-dam/b2bhc/master/landing-pages/src/update/documents/ philips-recall-clinical-information-for-physicians-and-providers.pdf.

30.    Philips also recalled the following ventilators:

| Device Type | Model Name and Number |
|---|---|
| Continuous Ventilator | Trilogy 100 |
| | Trilogy 200 |
| | Garbin Plus, Aeris, LifeVent |
| Continuous Ventilator, Minimum Ventilatory Support, Facility Use | A-Series BiPAP Hybrid A30 |
| | A-Series BiPAP V30 Auto |
| Continuous Ventilator, Non-life Supporting | A-Series BiPAP A40 |
| | A-Series BiPAP A30 |

31.    Notably, Philips did not recall its DreamStation 2 CPAP machines, which it released in 2020. The DreamStation 2 line of products do not have PE-PUR foam insulation. This fact raises an inference that Philips knew prior to its April 26 and June 14, 2021 notices that the PE-PUR foam was dangerous to its respirator and ventilator users.

**D.    Philips Understands the Danger Posed by the PE-PUR Foam Defect.**

32.    Despite its understated rhetoric, Philips understands the risk at which it put its customers.

33.    Philips instructed its CPAP and BiPAP users to "[d]iscontinue use" of their machines. Nevertheless, recognizing that many patients have a "lack of alternatives" to their Defective Breathing Device, customers were directed to "consult with your physician to determine if the benefit of continuing therapy with your device outweighs the risks identified in the recall notification."

34.    Although the PE-PUR foam defect is no less dangerous for customers who use mechanical ventilators, Philips has not instructed them to stop using their devices due to the "life-sustaining" nature of ventilation therapy. Once again, Philips understands that "alternate ventilator options for therapy may not exist or may be severely limited for patients who require a ventilator for life-sustaining therapy, or in cases where therapy disruption is unacceptable. In

these situations, and at the discretion of the treating clinical team, the benefit of continued usage

of these ventilator devices may outweigh the risks identified in the recall notification."

      **E.**    **<u>Philips Has Not Provided Its Customers with Replacement Devices or Refunds.</u>**

      35.     In its "voluntary recall notification," Philips claimed it would be launching a

"repair and replacement" program. Specifically, the company promised to "replace the current

sound abatement foam with a new material." Philips claimed it had "already begun the

preparations, which include obtaining the relevant regulatory clearances."

      36.     In fact, Philips has not provided its customers with a safe or satisfactory solution

to the PE-PUR foam defect. If Plaintiffs and other affected patients want to treat their sleep

apnea or respiratory failure, they have no choice but to use their dangerous Defective Breathing

Devices or pay for a new device. Philips has not specified when its promised replacement

program will begin, how long it will take, or how it will be carried out, including what the

owners of Defective Breathing Devices are supposed to do while the devices are being repaired

(if a repair actually is available).

      37.     Philips said it plans to increase the production of its DreamStation 2 CPAP

machine, which does not feature the PE-PUR foam insulation. However, Philips also indicated

that its "repair and replacement" program will consist of "replac[ing] the current sound

abatement foam with a new material," not replacing the Defective Breathing Devices altogether.

It is therefore unclear whether Philips is increasing DreamStation 2 production in anticipation of

providing customers with new devices, or because Philips hopes customers, tired of waiting for

Philips to act, will spend money on Philips's newest product.

      38.     All Plaintiffs and Class members paid more for their Defective Breathing Devices

than they should have paid.  The market price assumed the devices were safe to use; all Plaintiffs

and Class members would have paid less for the device or would not have purchased it at all if they had known the devices create a serious health risk.

 39. Many Plaintiffs and Class members are further economically damaged beyond their overpayment for the defective devices, because they have been and will be forced to spend money to buy new machines they otherwise would not have needed to purchase now.

## V. CLASS ACTION ALLEGATIONS

 40. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiffs bring their claims (as further indicated below) on behalf of themselves and a "Class," an "Oregon Subclass," and a "California Subclass" defined as:

> **Class**
> All persons in the United States who purchased or leased a Defective Breathing Machine for personal use before June 14, 2021.
>
> **Oregon Subclass**
> All persons in Oregon who purchased or leased a Defective Breathing Machine for personal use before June 14, 2021.
>
> **California Subclass**
> All persons in California who purchased or leased a Defective Breathing Machine for personal use before June 14, 2021.

 41. Excluded from the Class and Subclasses are Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his or her immediate family. Plaintiffs reserve the right to revise the Class and/or Subclass definitions based upon information learned through discovery or as otherwise may be appropriate.

 42. Pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiffs seek to represent the above Subclasses as well as any subclasses or issue classes as Plaintiffs may propose and/or the Court may designate at the time of class certification.

43.     **Numerosity: Rule 23(a)(1).** The Class and Subclasses are too numerous and dispersed for joinder of all Class members to be practicable.  On information and belief, the Class consists of over two million people, while the Subclasses include tens of thousands of people.  The precise number of Class and Subclass members can be ascertained from Defendants' records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media, and published notice.

44.     **Commonality: Rules 23(a)(2)**. This action involves significant common questions of law and fact, including, but not limited to:

a.     Whether Philips breached its express warranties by selling the Defective Breathing Devices;

b.     Whether the presence of the PE-PUR foam rendered the Defective Breathing Devices not merchantable;

c.     Whether Philips falsely, deceptively, or misleadingly represented that its Defective Breathing Devices were safe to use;

d.     Whether these representations arose from a common course of conduct;

e.     Whether Philips knew or should have known that these representations were false, deceptive, or misleading;

f.     Whether these representations were likely to deceive a reasonable customer;

g.     Whether Philips owed a duty to disclose to Plaintiffs;

h.     Whether Philips omitted from all of its marketing, advertising, labeling and instruction materials the fact that foam from the Defective Breathing Devices posed a serious health risk to users of the devices;

i.     Whether a reasonable customer would consider the safety of their CPAP machine, BiPAP machine, or mechanical ventilator to be material; and

j.     Whether Philips was unjustly enriched by the sale or lease of the Defective Breathing Devices to Plaintiffs and Class members.

45.    ***Typicality: Rule 23(a)(3).*** Plaintiffs' claims are typical of the claims of the Class and Subclass members whom they seek to represent.  Plaintiffs, like all Class and Subclass members, purchased a Defective Breathing Device and have not had their devices repaired, replaced, or refunded by Philips. Plaintiffs' claims are based upon the same legal theories as the claims of the other Class and Subclass members.

46.    ***Adequacy: Rule 23(a)(4).*** Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclass members. Plaintiffs have retained counsel competent and experienced in complex class action litigation, including consumer protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Class and Subclass members.

47.    ***Rule 23(b)(2).*** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class and Subclass, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class and Subclass as a whole.

48.    ***Rule 23(b)(3).*** Common questions of law and fact predominate over any questions, if any, affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  Paragraph 44 above lists examples of issues that are common to all Class members and that predominate over any potential individual issues.

49.    The damages or other financial detriment suffered by Plaintiffs and the other Class and Subclass members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Philips, so it would be impracticable for

members of the Class and Subclass to individually seek redress for Defendants' wrongful

conduct.

50.    Even if Class members could afford individual litigation, the court system could

not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and

increases the delay and expense to all parties and the court system. By contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economies of scale, and comprehensive supervision by a single court. A class

action in this case would be vastly superior to millions of individual lawsuits.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

51.    All applicable statutes of limitations have been tolled by Philips' fraudulent and

deliberate concealment of the PE-PUR foam defect. As a result of Philips' actions, Plaintiffs and

Class members did not know, nor could they have known, about the defective nature of their

devices or that they were exposed to the risks and harms set forth above until, at the earliest, June

14, 2021.

## VII.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Breach of Express Warranty
### (On Behalf of Plaintiffs and the Class or, in the alternative, the Oregon Subclass and the California Subclass)

52.    Plaintiffs re-allege and incorporates by reference into this claim for relief all

allegations set forth in paragraphs 1–51 of this Complaint.

53.    Plaintiffs bring this claim for relief on behalf of themselves and the proposed

Class.

54.    In the alternative, Plaintiffs bring this claim for relief on behalf of themselves and

the Oregon Subclass and the California Subclass.

55.     Philips expressly warranted that its Defective Breathing Devices "shall be free from defects of workmanship and materials and will perform in accordance with the product specifications for a period of two (2) years from the date of sale."

56.     Philips breached this warranty by selling Defective Breathing Devices that, at the point of sale, contained latent defects that rendered the devices unsafe for normal use.

57.     Philips further breached this warranty by failing to provide appropriate relief to Plaintiffs and Class members once the defect became public. In particular, Philips has not repaired or replaced the Defective Breathing Devices, nor has it refunded the cost of the devices to Plaintiffs and Class members.  Philips also has failed to provide customers sufficient information about the supposed recall, including when it will begin, how long it will take to repair the Defective Breathing Devices, and how Plaintiffs and Class members are supposed to breathe at night while waiting for the recall and repair to occur.

58.     Philips' acts in failing and/or refusing to replace or repair the Defective Breathing Devices deprived Plaintiffs and Class members of their rights guaranteed to them under the express warranty offered by Philips. Philips' failure and/or refusal to refund the amounts Plaintiffs and Class members paid for the Defective Breathing Devices also deprived Plaintiffs and Class members of their rights under the express warranty.

59.     As a direct and proximate result of Philips' breach of the express warranty, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
**(On Behalf of Plaintiffs and the Class or, in the alternative, the Oregon Subclass and the California Subclass)**

60.     Plaintiffs re-allege and incorporates by reference into this claim for relief all allegations set forth in paragraphs 1–59 of this Complaint.

61.     Plaintiffs bring this claim for relief on behalf of themselves and the proposed Class.

62.     In the alternative, Plaintiffs bring this claim for relief on behalf of themselves and the Oregon Subclass and the California Subclass.

63.     When it sold the Defective Breathing Devices, Philips extended an implied warranty to Class members that the devices were merchantable and fit for the ordinary purpose for which they were sold.

64.     Plaintiffs and other Class members who purchased a Defective Breathing Device are entitled to the benefit of their bargain: a device that is safe to use for treatment of sleep apnea or respiratory failure.

65.     Philips breached this implied warranty in that its Defective Breathing Devices are (1) not fit for ordinary use, and (2) not of a merchantable quality.

66.     The PE-PUR foam defect is latent and was present at the time of the sale, and therefore the Defective Breathing Devices were not merchantable at the time of the sale.

67.     Had Plaintiffs and Class members known about the PE-PUR foam defect at the time of sale, they would not have bought the Defective Breathing Devices, or they would have purchased the devices at a lower price.

68.     As a direct and proximate result of Philips' breach of the implied warranty of merchantability, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**Breach of Warranty under the Song Beverly Consumer Warranty Act**
**(On Behalf of Plaintiff Patrick Nielson and the California Subclass)**

69.    Plaintiffs re-allege and incorporates by reference into this claim for relief all allegations set forth in paragraphs 1–68 of this Complaint.

70.    Plaintiff Patrick Nielson brings this claim for relief on behalf of himself and the proposed California Subclass.

71.    Philips' Defective Breathing Devices are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

72.    Philips is a manufacturer within the meaning of Cal. Civ. Code § 1791(j).

73.    Mr. Nielson and California Subclass members are "buyers" and "lessees" within the meaning of Cal. Civ. Code. § 1791(b) and (h).

74.    By operation of law, every Defective Breathing Device sold or leased within California included an implied warranty that the goods are merchantable. Cal. Civ. Code. § 1792.

75.    The PE-PUR foam defect is latent and was present at the time of the sale, and therefore the Defective Breathing Devices were not merchantable at the time of the sale. Philips therefore breached these implied warranties by selling and leasing Defective Breathing Devices that were not fit for ordinary use and that were not of merchantable quality.

76.    Mr. Nielson and the California Subclass members are intended beneficiaries of the implied warranties between Philips and its distributors.

77.    Had Mr. Nielson and the California Subclass members known about the PE-PUR foam defect at the time of sale, they would not have bought the Defective Breathing Devices, or they would have purchased the devices at a lower price.

78.    As a direct and proximate result of Philips' breach of its implied warranties, Mr. Nielson and the California subclass members have been damaged in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiffs and the Class or, in the alternative, the Oregon Subclass and the California Subclass)**

79.     Plaintiffs re-allege and incorporates by reference into this claim for relief all allegations set forth in paragraphs 1–78 of this Complaint.

80.     Plaintiffs bring this cause of action for themselves and on behalf of the Class.

81.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

82.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

83.     Philips is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

84.     The Defective Breathing Devices are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

85.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

86.     Philips expressly warranted that its Defective Breathing Devices "shall be free from defects of workmanship and materials and will perform in accordance with the product specifications for a period of two (2) years from the date of sale." This warranty is a written warranty within the meaning of 15 U.S.C. § 2301(6).

87.     The Defective Breathing Devices' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

88.     With respect to Class members' purchases or leases of the Defective Breathing Devices, the terms of Philips' written warranty and implied warranty became part of the basis of

the bargain between Philips, on the one hand, and Plaintiffs and each of the members of the proposed Class, on the other.

89.     The PE-PUR foam defect is latent and was present at the time of the sale, and therefore the Defective Breathing Devices were not merchantable at the time of the sale. Philips therefore breached these implied warranties by selling and leasing Defective Breathing Devices that were not fit for ordinary use and that were not of merchantable quality.

90.     Philips breached its express warranty by selling Defective Breathing Devices that, at the point of sale, contained latent defects that rendered the devices unsafe for normal use.

91.     Philips further breached this warranty by failing to provide appropriate relief to Plaintiffs and Class members once the defect became public. In particular, Philips has not repaired or replaced the Defective Breathing Devices, nor has it refunded the cost of the devices to Plaintiffs and Class members.  Philips also has failed to provide customers sufficient information about the supposed recall, including when it will begin, how long it will take to repair the Defective Breathing Devices, and how Plaintiffs and Class members are supposed to breathe at night while waiting for the recall and repair to occur.

92.     Philips' acts in failing and/or refusing to replace or repair the Defective Breathing Devices deprived Plaintiffs and Class members of their rights guaranteed to them under the express warranty offered by Philips. Philips' failure and/or refusal to refund the amounts Plaintiffs and Class members paid for the Defective Breathing Devices also deprived Plaintiffs and Class members of their rights under the express warranty.

93.     The amount in controversy of Plaintiffs' individual claims meet or exceed the sum of $25. The amount in controversy in this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

94.     As a direct and proximate result of Philips' breach of its express warranty and implied warranties, Plaintiffs and the Class members have been damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### Fraudulent Misrepresentation
**(On Behalf of Plaintiffs and the Class or, in the alternative, the Oregon Subclass and the California Subclass)**

95.     Plaintiffs re-allege and incorporates by reference into this claim for relief all allegations set forth in paragraphs 1–94 of this Complaint.

96.     Plaintiffs bring this claim for relief on behalf of themselves and the proposed Class.

97.     In the alternative, Plaintiffs bring this claim for relief on behalf of themselves and the Oregon Subclass and the California Subclass.

98.     Philips falsely represented to Plaintiffs and the Class that the Defective Breathing Devices were safe for ordinary use. In fact, the Defective Breathing Devices were unsafe for ordinary use because of the tendency of the PE-PUR foam insulation to degrade and emit toxic chemicals. Philips made these representations in advertising, packaging, and other written materials about the Defective Breathing Devices.

99.     This fact was material to Plaintiffs and Class members, all of whom purchased the Defective Breathing Devices because of concerns regarding health and safety. Philips' false representations were intended to induce Plaintiffs and Class members to purchase their Defective Breathing Devices.

100.    Plaintiffs and Class members relied on Philips' representation that the Defective Breathing Devices were safe for ordinary use. This reliance was justifiable given Philips'

deceptive representations, as well as the central importance of health and safety to every purchaser of the Defective Breathing Devices.

101.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class have sustained actual damages. If Plaintiffs and Class members had known of the health risks associated with use of the Defective Breathing Devices, they would not have purchased them at all. In addition, Plaintiffs and Class members all overpaid for the Defective Breathing Devices, which did not conform to the promises made in the devices' packaging, advertising, labels, and product statements.

## SIXTH CLAIM FOR RELIEF
### Fraudulent Omission
### (On Behalf of Plaintiffs and the Class or, in the alternative, the Oregon Subclass and the California Subclass)

102.    Plaintiffs re-allege and incorporate by reference into this claim for relief all allegations set forth in paragraphs 1–101 of this Complaint.

103.    Plaintiffs bring this claim for relief on behalf of themselves and the proposed Class.

104.    In the alternative, Plaintiffs bring this claim for relief on behalf of themselves and the Oregon Subclass and the California Subclass.

105.    Philips concealed from Plaintiffs and Class members the fact that the PE-PUR foam in the Defective Breathing Devices poses a risk of harm to users.

106.    Philips was under a duty to disclose the health dangers posed by the Defective Breathing Devices to Plaintiffs and Class members because Philips knew facts that would prevent its non-disclosure from being misleading, and a reasonable consumer would have considered the non-disclosed facts material when deciding whether to purchase the Defective Breathing Devices.

107.     The nondisclosed risk of harm posed by the PE-PUR foam was essential to each

Plaintiffs and Class member's purchase of the Defective Breathing Devices. If Plaintiffs and

Class members knew the PE-PUR foam in these devices had a tendency to degrade and/or emit

harmful chemicals, thereby posing a risk of harm to users, they would not have purchased their

devices or would have paid less for the devices.

108.     As a direct and proximate result of Philips' conduct, Plaintiffs and the Class have

sustained actual damages. If Plaintiffs and Class members had known of the health risks

associated with use of the Defective Breathing Devices, they would not have purchased them at

all. In addition, Plaintiffs and Class members all overpaid for the Defective Breathing Devices,

which did not conform to the promises made in the devices' packaging, advertising, labels, and

product statements.

## SEVENTH CLAIM FOR RELIEF
**Unfair and Deceptive Practices under Mass. Gen. Laws ch. 93A[10]**
**(On Behalf of Plaintiffs and the Class)**

109.     Plaintiffs re-allege and incorporate by reference into this claim for relief all

allegations set forth in paragraphs 1–108 of this Complaint.

110.     Plaintiffs bring this claim for relief on behalf of themselves and the proposed

Class.

111.     M.G.L. chapter 93A prohibits "unfair or deceptive acts or practices in the conduct

of any trade or commerce." M.G.L. ch. 93A, § 2.

112.     Philips' manufacture, sale, and marketing of the Defective Breathing Devices

occurred in "trade" and "commerce." M.G.L. ch. 93A, § 1(b).

---

[10] Plaintiffs served their M.G.L. c. 93A demand letter on Defendants and are awaiting a response. Once 30 days after service of the demand have expired, Plaintiffs will amend the complaint to reflect Defendants' response.

113.    Philips engaged in unfair and deceptive acts or practices when it breached its express warranty with Plaintiffs and Class members, as detailed above.

114.    Philips engaged in unfair and deceptive acts or practices when it breached its implied warranty of merchantability with Plaintiffs and Class members, as detailed above.

115.    Philips engaged in unfair and deceptive acts or practices when it fraudulently represented that its Defective Breathing Devices were safe for ordinary use when, in fact, the PE-PUR foam defect rendered the devices unsafe for ordinary use.

116.    Plaintiffs and Class members are entitled to bring suit under M.G.L. chapter 93A because they have "engage[d] in the conduct of any trade or commerce" and they "suffer[ed] . . . loss of money or property" as a result of Philip's unfair and deceptive acts, which include nationwide misrepresentations emanating from Philips NA's headquarters in Massachusetts.

117.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class have sustained actual damages. If Plaintiffs and Class members had known of the health risks associated with use of the Defective Breathing Devices, they would not have purchased them at all. In addition, Plaintiffs and Class members all overpaid for the Defective Breathing Devices, which did not conform to the promises made in the devices' packaging, advertising, labels, and product statements.

**EIGHTH CLAIM FOR RELIEF**
**Unlawful Trade Practices under O.R.S. § 656.605 *et seq.***
**(On Behalf of Plaintiffs Brad Miller, Mark Mackenzie, and the Oregon Subclass)**

118.    Plaintiffs re-allege and incorporate by reference into this claim for relief all allegations set forth in paragraphs 1–117 of this Complaint.

119.    Plaintiffs Brad Miller and Mark Mackenzie ("Oregon Plaintiffs") bring this claim for relief on behalf of themselves and the Oregon Subclass.

120.     The Oregon Unlawful Trade Practices Act ("UTPA") prohibits "unlawful trade practice[s] . . . in the course of [a] person's business, vocation or occupation." O.R.S. § 646.608(1). A person commits an unlawful trade practice by "[e]ngag[ing] in any . . . unfair or deceptive conduct in trade or commerce." O.R.S. § 646.608(1)(u); *see* O.R.S. § 646.638(1).

121.     Philips' manufacture, sale, and marketing of the Defective Breathing Devices occurred in "trade" and "commerce." O.R.S. § 646.605(8).

122.     Philips engaged in unfair and deceptive acts or practices when it breached its express warranty with Oregon Plaintiffs and Oregon Subclass members, as detailed above.

123.     Philips engaged in unfair and deceptive acts or practices when it breached its implied warranty of merchantability with Oregon Plaintiffs and Oregon Subclass members, as detailed above.

124.     Philips engaged in unfair and deceptive acts or practices when it fraudulently represented that its Defective Breathing Devices were safe for ordinary use when, in fact, the PE-PUR foam defect rendered the devices unsafe for ordinary use.

125.     Oregon Plaintiffs and the Oregon Subclass are entitled to bring suit under the UTPA because they have "suffer[ed] an ascertainable loss of money or property, real or personal, as a result of [Philips'] willful use or employment of a method, act or practice declared unlawful under" the UTPA. O.R.S. § 646.638(1).

126.     As a direct and proximate result of Philips' conduct, Oregon Plaintiffs and the Oregon Subclass have sustained actual damages. If Oregon Plaintiffs and Oregon Subclass members had known of the health risks associated with use of the Defective Breathing Devices, they would not have purchased them at all. In addition, Oregon Plaintiffs and Oregon Subclass

members all overpaid for the Defective Breathing Devices, which did not conform to the promises made in the devices' packaging, advertising, labels, and product statements.

## NINTH CLAIM FOR RELIEF
### Unfair Competition under Cal. Bus. & Prof. Code § 17200 *et seq.*
### (On Behalf of Plaintiff Patrick Nielson and the California Subclass)

127.    Plaintiffs re-allege and incorporate by reference into this claim for relief all allegations set forth in paragraphs 1–126 of this Complaint.

128.    Plaintiff Patrick Nielson brings this claim for relief on behalf of himself and the California Subclass.

129.    California Business & Professions Code § 17200 (the "UCL") prohibits "unfair competition" including any "unlawful, unfair, or fraudulent business practice" and "unfair, deceptive, untrue or misleading advertising." Philips engaged in conduct that violated each of this statute's three prongs.

130.    Philips committed an unlawful business act or practice in violation of the UCL by systematically breaching its warranty obligations and by violating the Song-Beverly Consumer Warranty Act, the Magnuson-Moss Warranty, as alleged above.

131.    Philips committed unfair business acts and practices in violation of the UCL because the acts and practices described herein, including but not limited to Philips' failure to timely disclose the known and foreseeable harmful effects of PE-PUR foam in the Defective Breathing Devices, were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Mr. Nielson and the California Subclass members. Further, Philips' acts and practices were unfair in that they were contrary to legislatively declared or public policy, including the Magnuson-Moss Warranty Act and the Song-Beverly Consumer Warranty Act.

The harm to Mr. Nielson and the California Subclass members is substantial and is not outweighed by any countervailing benefits to consumers or competition.

132.    Philips committed fraudulent business acts and practices in violation of the UCL when it concealed the existence and nature of the unsafe PE-PUR foam defect, while representing that its machines provided safe, "efficient," and "effective" care. Philips' representations, omissions, and active concealments about the PE-PUR foam defect were likely to mislead the public with regard to the true defective nature of the Defective Breathing Devices.

133.    Philips' unfair or deceptive acts or practices occurred repeatedly in the course of Philips' trade or business, and they were likely to mislead a substantial portion of the purchasing public.

134.    Mr. Nielson relied on Philips' material representations and nondisclosures. If he knew that the Defective Breathing Devices would put him in harm's way, he would not have bought these devices at all.

135.    As a direct and proximate result of Philips' unfair, unlawful, and deceptive practices, Mr. Nielson overpaid for the Defective Breathing Deevicees.

136.    Mr. Nielson and the California Subclass seek an order enjoining Philips from committing such unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. & Prof. Code § 17203.

**TENTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class or, in the alternative, the Oregon Subclass and the California Subclass)**

137.    Plaintiffs re-allege and incorporate by reference into this claim for relief all allegations set forth in paragraphs 1–136 of this Complaint.

138.    Plaintiffs bring this claim for relief on behalf of themselves and the proposed Class.

139.    In the alternative, Plaintiffs bring this claim for relief on behalf of themselves and the Oregon Subclass and the California Subclass.

140.    Philips has been unjustly enriched by Plaintiffs and Class members purchasing Defective Breathing Devices from Philips that Plaintiffs and Class members would not have purchased but for Philips' misconduct alleged above.

141.    Plaintiffs and Class members unknowingly conferred a benefit on Philips of which Philips had knowledge, because Philips was aware of the defective nature of the Defective Breathing Devices' PE-PUR foam insulation but failed to disclose this knowledge and misled Plaintiffs and Class members regarding the nature and quality of the devices while profiting from this deception.

142.    The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Philips to retain the benefit of profits it unfairly obtained from Plaintiffs and Class members. These profits include the premium price Plaintiffs and the Class paid for the Defective Breathing Devices.

143.    Plaintiffs and Class members, having been damaged by Philips' conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Philips to their detriment.

## VII.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Oregon Subclass, request that the Court:

a.    Determine that the claims asserted herein on behalf of the Class and Subclasses may be maintained as a class action under Federal Rule of Civil Procedure 23(a),

(b)(2), and (b)(3), designate Plaintiffs as the named representatives of the Class

and Subclass, and appoint Plaintiffs' counsel as  counsel for the Class and

Subclass;

b.      Award equitable and injunctive relief, including but not limited to restitution and

disgorgement of profits;

c.      Award all actual, special, general, incidental, consequential, and punitive damages

to which Plaintiffs, the Class, and the Subclasses are entitled;

d.      Award reasonable attorney's fees and costs;

e.      Award pre-judgment and post-judgment interest; and

f.      Grant such other relief as the Court may deem proper.

## VIII.    __JURY TRIAL DEMAND__

Plaintiffs demand a trial by jury.

Dated:  August 10, 2021          */s/ Robert Klonoff*_____

Robert Klonoff, OSB No. 131193
2425 S.W. 76th Ave.
Portland, OR  97225
Telephone:  503.702.0218
Facsimile:  503.768.6671

David S. Stellings (*pro hac vice* application forthcoming)
Katherine McBride (*pro hac vice* application forthcoming)
Gabriel Panek (*pro hac vice* application forthcoming)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1436
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Attorneys for Plaintiffs and the Proposed Class and
Subclasses*